# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE E. INTORRE,<br>           **Plaintiff,**<br>     v.<br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br>           **Defendant.** | NO. ED CV 17-260-KS<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Joanne E. Intorre ("Plaintiff") filed a Complaint on February 14, 2017, seeking review of the denial of her applications for disability benefits under Titles II and XVI of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On November 29, 2017, the parties filed a Joint Stipulation. (Dkt. No. 23 ("Joint Stip.")) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 25-26.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded

1

for further proceedings. (*Id.* at 26-27.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On March 13, 2013, Plaintiff, who was born on July 22, 1958[1], protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. (Administrative Record ("AR") 21, 202-15.) In both applications, Plaintiff alleged disability commencing on December 15, 2011 due to depression; numbness in her back, neck, and arms; diabetes; and arthritis. (AR 93, 106.) Plaintiff previously worked as a food services manager, uniforms sales representative, route sales-delivery driver supervisor, and manicurist. (AR 31-32.) After the Commissioner denied Plaintiff's applications initially (AR 119-20) and on reconsideration (AR 151-52), Plaintiff requested a hearing (AR 168).

At a hearing held on June 19, 2015, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (AR 42-88.) On December 14, 2015, the ALJ issued an unfavorable decision denying Plaintiff's applications for SSI and DIB. (AR 21-33.) On December 22, 2016, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her December 15, 2011 alleged onset date and that Plaintiff had the following severe impairment: degenerative disc disease of the lumbar and cervical spine. (AR 23.) The ALJ

---

[1] Plaintiff was 53 years of age at the alleged onset date. (AR 82.) Under agency regulations, she was considered a person closely approaching advanced age. *Id.* § 404.1563(d).

concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in the Commissioner's Listing of Impairments. (AR 26.) The ALJ made two separate residual functional capacity ("RFC") determinations of Plaintiff's exertional limitations: first, for the period of December 15, 2011 to March 31, 2014, he concluded that Plaintiff had an RFC for light work; and second, for the period from April 1, 2014, to the date of the ALJ's decision on December 17, 2015, he determined that Plaintiff had an RFC for sedentary work. (AR 27.) The two separate RFCs were based on the ALJ's determination that Plaintiff's back condition appeared to worsen beginning in April 2014. (AR 28.)

Specifically, from the alleged onset date through March 31, 2014, the ALJ determined Plaintiff had the RFC to:

> lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; push and pull within the weight limits indicated for lifting and carrying; balance, crouch, and climb ramps and stairs frequently; stoop, kneel, crawl, and climb ladders, ropes, and scaffolds occasionally; and no other exertional or nonexertional limitations.

(AR 27.) For the period since April 1, 2014, the ALJ determined Plaintiff had the RFC to:

> Lift and carry ten pounds occasionally and less than ten pounds frequently; stand and walk for two hours out of an eight-hour workday with regular breaks; a cane is necessary for walking with the other hand available to lift and carry small articles like docket files, ledgers, and small tools while walking; a walker is necessary for walking a distance of more than 20 yards; sit for six hours out of an eight-hour workday with regular breaks; push and pull within the weight

limits indicated for lifting and carrying; balance, crouch, and climb ramps and stairs frequently, stoop, kneel, crawl, and climb ladders, ropes, and scaffolds occasionally; and no other exertional or nonexertional limitations.

(*Id.*)

For the first period—December 15, 2011 to March 31, 2014—the ALJ found that Plaintiff was capable of performing her past relevant work as a manicurist, both as she actually performed it and as it is generally performed in the national economy. (AR 32.) For the second period from April 1, 2014 to the date of the ALJ's decision on December 17, 2015, the ALJ found that Plaintiff was capable of performing her past relevant work as a manicurist only as it is generally performed. (*Id*.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports

and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citations omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)(citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

**DISCUSSION**

Plaintiff alleges the following three errors:

(1) The ALJ's RFC determination failed to properly account for the opinion of Plaintiff's treating physician and other medical evidence;

(2) the ALJ failed to properly evaluate the credibility of Plaintiff's subjective complaints; and

(3) the ALJ's determination at Step Four raised an unresolved conflict with the Dictionary of Occupational Titles and other occupational materials. (Joint Stip. at 4-5.)

5

For the reasons discussed below, the Court concludes that the second issue warrants reversal and remand for further administrative proceedings.

**I.     RFC Determination (Issue One)**

Plaintiff contends that the ALJ's RFC determination failed to account for the opinion of her treating physician, Dr. Sodagar-Marvasti, and other medical findings regarding her back impairment. (Joint Stip. at 5-9.)

**A.     Applicable Law**

A claimant's RFC represents the most a claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945 (a)(1); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original). In particular, the RFC determination must account for the opinion of a claimant's treating physician unless that opinion is properly rejected. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008).

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927 (c)(2). To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial

6

evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). If, however, the treating physician's opinion is contradicted by another medical source, the ALJ must consider the factors set out in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6) in determining how much weight to accord it. These factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, the "[n]ature and extent of the treatment relationship" between the patient and the treating physician, the "[s]upportability" of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole. The ALJ must articulate "specific and legitimate reasons that are supported by substantial evidence" to reject the contradicted opinions of a treating physician. *Ghanim*, 763 F.3d at 1161.

### B. Analysis

Plaintiff's treating physician, Dr. Sodagar-Marvasti, completed a Physical Residual Functional Capacity Questionnaire in June 2013 about Plaintiff's physical limitations. (AR 592-93.) Dr. Sodagar-Marvasti treated Plaintiff on a regular basis from January 12, 2011 through June 11, 2013, and noted that he saw Plaintiff every 1-3 months, "sometimes more frequent." (AR 592.) He concluded that "in my opinion, [Plaintiff] cannot work at this time." (AR 592.) In relevant part, he specified that he would limit Plaintiff to standing for five minutes at a time, sitting for less than two hours in an eight-hour work day, and lifting less than 10 pounds at a time. (AR 592-93.) He also stated that Plaintiff had significant limitations in reaching, handling, and fingering. (AR 593.) Neither of the ALJ's RFC determinations incorporated these limitations regarding Plaintiff's manipulative abilities. (AR 27.)

Dr. Sodagar-Marvasti's opinion was contradicted by the opinions of Dr. Vicente Bernabe, an examining orthopedist, and two non-examining state agency physicians, Dr. Jacobs (*see* AR 102-04, 115-16), and Dr. Lizarraras (*see* AR 132-33, 147-48). Dr. Bernabe

performed an orthopedic consultation with Plaintiff on July 31, 2013, a little over a month after Dr. Sodagar-Marvasti's questionnaire. (AR 506-11.) Dr. Bernabe noted that Plaintiff's medical records reflected a "diagnosis of degenerative disc disease at L3-L4 and L5-S1 with lumbar spondylosis" based on an x-ray report dated May 31, 2013; a degenerative narrowing of her cervical spine based on an x-ray dated May 13, 2013; and a normal examination of her left shoulder. (AR 506.) Dr. Bernabe also noted that Plaintiff moved in and out of the office and examination room without any assistive devices," "sits and stands with normal posture", her gait was normal and "she uses no assistive devices to ambulate and is able to get on and off the examining table without difficulty." (AR 508.) Dr. Jacobs found in August 2013, that Plaintiff had exertional and postural limitations, but had no manipulative limitations. (AR 102-03.) Dr. Lizarraras concluded in January 2014, based on a review of Plaintiff's medical records, that she had no manipulative limitations and could perform her previous relevant work as actually performed. (AR 134.)

Because Dr. Sodagar-Marvasti's opinion was contradicted by the opinions of an examining physician (AR 506-11) and two state agency physicians (AR 102-03, 115-16, 132-33, 147-48), the ALJ was required to state specific and legitimate reasons to reject Dr. Sodagar-Marvasti's opinion.

The ALJ gave "little weight" to Dr. Sodagar-Marvasti's opinion for two reasons. (AR 30-31.) First, the ALJ stated that Dr. Sodagar-Marvasti's opinion about Plaintiff's ability to work involved an issue reserved to the Commissioner and depended on "vocational factors with respect to which Dr. Sodagar-Marvasti is not an expert." (AR 30.) This was not a specific and legitimate reason. While it is undisputed that a disability determination involves an issue reserved to the Commissioner, *see* 20 C.F.R. §§ 404.1527(d)(1), 416.927 (d)(1), this does not mean that a physician is unqualified to give a medical opinion about a claimant's ability to work simply because the physician is not an expert in every field implicated by a disability determination. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("In

disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability – the claimant's ability to perform work."); *Esparza v. Colvin*, 631 F. Appx. 460, 462 (9th Cir. 2015) ("[T]he fact that the treating physician's opinion was on an issue reserved to the Commissioner is not by itself a reason for rejecting that opinion."). Although an ALJ is not bound by such an opinion, the ALJ still must provide legally sufficient reasons to reject it. *Reddick*, 157 F.3d at 725. Because Dr. Sodagar-Marvasti's opinion about Plaintiff's ability to work was competent evidence on the ultimate issue of disability, the opinion could not be rejected merely because of his apparent lack of expertise in vocational factors.

Nonetheless, this error was harmless in light of the ALJ's second reason, which Plaintiff does not challenge. The ALJ stated that Dr. Sodagar-Marvasti "did not adequately explain the opinion." (AR 30-31.) Specifically, the ALJ explained that Dr. Sodagar-Marvasti "did not cite medically acceptable objective clinical or diagnostic findings," in either the opinion or the treatments notes from the same date; that the opinion appeared to be based largely on Plaintiff's "subjective complaints with little consideration of positive objective clinical or diagnostic findings"; and that "checklist opinions are weak evidence at best." (AR 31.) The Court agrees that both the opinion (AR 592-93) and the treatment note from the same date (AR 456) lacked evidentiary support from objective clinical or diagnostic findings, or was in the form of an unexplained checklist.

The Ninth Circuit has repeatedly held that a treating physician's opinion may be properly rejected under these circumstances. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that treating physician's opinion that was "unsupported by rationale or treatment notes, and offered no objective medical findings" to support diagnoses was properly rejected); *Crane v. Shalala*,

76 F.3d 251, 253 (9th Cir. 1995) (holding that an ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions"). Thus, this was a specific and legitimate reason to accord little weight to the treating physician's opinion, and reversal is not warranted on this basis.

Finally, Plaintiff identifies various other objective medical findings to challenge the ALJ's RFC determination. (Joint Stip. at 5-7.) For example, x-rays repeatedly showed severe degenerative disc disease and other back disorders; and Plaintiff reported pain in her neck, right arm, lower back, and left leg. (*Id*. at 6.) It is unclear, however, how such medical results translate into specific functional deficits that would have been relevant to the ALJ's RFC determination. *See Morgan v. Comm'r of the SSA*, 169 F.3d 595, 601 (9th Cir. 1999) (explaining that an ALJ need not credit medical evidence that did not "translate into specific functional deficits which preclude work activity"); *see also Decker v. Berryhill*, 856 F.3d 659, 665 (9th Cir. 2017) (commenting that a district court is "not required to interpret for itself test results in the way that [a claimant] wanted"). Thus, such evidence by itself also does not compel reversal because of the ALJ's RFC determination.

## II. **Plaintiff's Credibility (Issue Two)**

Plaintiff contends that the ALJ failed to provide legally sufficient reasons to reject her subjective symptom testimony. (Joint Stip. at 14-17.)

### A. **Applicable Law**

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible.[2] *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir.

---

[2] Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p superceded SSR 96-7p, which required the ALJ to assess the credibility of a claimant's statements. SSR 16-3p focuses on the existence of medical cause and an

10

2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Treichler*, 775 F.3d at 1102; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle*, 533 F.3d at 1161 (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear-and-convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

---

evaluation of "the consistency of the individual's statements about the intensity, persistence, or limiting effects of symptoms with the evidence of record without consideration of the claimant's overall 'character or truthfulness'." *See* Guide to SSA Changes in Regulations and Rulings 2016-17, June 2017. The revision is not applicable to Plaintiff's application here, which was filed on March 28, 2013. But the Ninth Circuit has acknowledged that SSR16-3p is consistent with existing precedent that requires that the assessments of an individual's testimony be focused on evaluating the "intensity and persistence of symptoms" after the ALJ has found that the individual has medically determinable impairments that could reasonably be expected to produce those symptoms. *Trevizo v. Berryhill*, 862 F.3d 987, 1000, n.5 (9th Cir. 2017).

**B.  Analysis**

At the administrative hearing, Plaintiff testified about the limitations arising from her physical and mental impairments. (AR 50-76.) She had neck surgery twice, in summer 2014 and again in May 2015. (AR 52-53.) She testified that her neck problem makes it difficult to move her head for activities such as driving. (AR 51-52.) In addition, she had pain in her lower back and blisters on her hands and feet. (AR 64-65.) She testified that she needs to use a walker "depending on how far [she's] going to walk." (AR 72.) She uses a cane for shorter distances. (*Id.*) She stated that she can sit for only ten minutes at a time and cannot use a computer because of arm pain. (AR 72-74.)

The ALJ found that Plaintiff had medically determinable impairments that could reasonably cause her symptoms but that her testimony about the limiting effects of those symptoms was "not entirely credible for the reasons explained in this decision." (AR 29.) But nowhere else in the decision did the ALJ clearly articulate any reasons for this conclusion discounting Plaintiff's credibility as to her subjective symptoms. This despite the ALJ's acknowledgement that there was record "evidence of increased severity of the claimant's impairments" reflected in an April 18, 2014 office visit. (AR 30.) "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ did not make a sufficiently specific finding to allow the Court's review.

The Commissioner contends that the ALJ did cite two reasons for the adverse credibility determination: (1) the absence of objective medical evidence to support Plaintiff's complaints, and (2) Plaintiff's failure to seek treatment without an adequate explanation. (Joint Stip. at 19-20.) But although the ALJ did generally discuss these issues, the ALJ

never clearly linked them to Plaintiff's credibility. The Court may not, in the first instance, supply such a link from the ALJ's general discussions, elsewhere in the administrative decision, of the objective medical evidence and Plaintiff's treatment history. *See Brown-Hunter*, 806 F.3d at 494 (holding that an ALJ's failure to link the record to a claimant's testimony was legal error that "could not be corrected by the district court's statement of links between claimant's testimony and certain medical evidence"); *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (rejecting a link between an ALJ's findings about the medical record and the adverse credibility determination elsewhere in the opinion where the ALJ "never stated that he rested his adverse credibility determination on those findings" and "did not make a specific finding linking a lack of medical records to Claimant's testimony"); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201-02 (9th Cir. 1990) (rejecting a link between an ALJ's finding of possibly adverse evidence and the adverse credibility determination in another portion of the decision where the ALJ did not "specifically link" the evidence to his conclusion that claimant's excess pain testimony lacked credibility); *see also Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) (declining to attribute an ALJ's discussion of physicians' opinions to the adverse credibility determination in another portion of the ALJ's decision). Thus, the Court declines to attribute the reasons cited by the Commissioner to the ALJ's adverse credibility determination.

This conclusion is consistent with the more general principle that a district court may not affirm an ALJ's decision in a Social Security case for reasons that the ALJ did not actually articulate. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Accordingly, the absence of any reviewable reasons in support of the ALJ's adverse credibility determination constituted reversible legal error.

//
//

13

1  **III.  Step Four Determination (Issue Three)**

Finally, Plaintiff contends that the ALJ's determination that she can perform her past relevant work as a manicurist raised conflicts with the Dictionary of Occupational Titles ("DOT") and other occupational materials. (Joint Stip. at 21-22.)

**A.  Applicable Law**

At step four of the sequential evaluation process, a claimant has the burden of showing that she can no longer perform her past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ still has a duty at step four to make specific findings as to the claimant's residual functional capacity ("RFC"), the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. *Pinto*, 249 F.3d at 845.

The ALJ may take the testimony of a VE to find that a claimant can or cannot continue her past relevant work. *Pinto*, 249 F.3d at 845. However, the Dictionary of Occupational Titles ("DOT") is the Commissioner's "primary source of reliable job information" and creates a rebuttal presumption as to a job classification. *Johnson v. Shalala*, 60 F.3d. 1428, 1434 n.6, 1435 (9th Cir. 1995); *see also Tommasetti v, Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008). An ALJ will ask the VE if his testimony is consistent with the DOT and "obtain a reasonable explanation for any apparent conflict." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing Social Security Ruling 00-4p). In sum, at step four, "[i]n order for an ALJ to accept vocational expert testimony that contradicts the Dictionary of Occupational Titles, the record must contain 'persuasive evidence to support the deviation.'" *Pinto*, 249 F.3d at 846 (quoting *Johnson*, 60 F.3d at 1435).

//
//

**B. Analysis**

At step four, the ALJ accepted the vocational expert's testimony that Plaintiff could perform her past relevant work as a manicurist. (AR 32.) Plaintiff contends that substantial evidence does not support this determination for two reasons: (1) Plaintiff lacks a license to work as a manicurist; and (2) Plaintiff has limitations in her hands that preclude her from performing the postural requirements of the manicurist occupation. (Joint Stip. at 21, 22.)

Plaintiff has submitted two types of occupational materials to support these contentions about the manicurist job. First, Plaintiff has attached an excerpt from the Occupational Outlook Handbook, published by the Department of Labor, describing the state licensing requirements for barbers, cosmetologists, and other personal appearance workers. (Joint Stip., Exhibit A at 3-4.)[3] Second, Plaintiff has attached a portion of the DOT section for the occupation of manicurist. (*Id.* at 1-2.) According to the DOT, a manicurist must engage in frequent reaching, handling, fingering, and feeling. DOT No. 331-676-010 (Manicurist).

As a threshold matter, the Commissioner contends that Plaintiff forfeited her arguments because Plaintiff's counsel did not bring any of these occupational materials to the ALJ's attention, as potential sources of conflict, during the administrative hearing. (Joint Stip. at 24.) The Court agrees only in part.

To the extent that Plaintiff's argument is premised on the ALJ's failure to consider the Occupational Outlook Handbook, or any other vocational materials apart from the DOT, that

---

[3] The Occupational Outlook Handbook also lists the more relevant occupations of "manicurists and pedicurists," which also require a state license. *See* https://www.bls.gov/ooh/personal-care-and-service/manicurists-and-pedicurists.htm#tab-4 (last accessed on March 1, 2018); *see also Dudum v. Arntz*, 640 F.3d 1098, 1101 n.6 (9th Cir. 2011) (federal courts may take judicial notice of government websites).

argument is forfeited. *See Shaibi v. Berryhill*, 870 F.3d 874, 882 (9th Cir. 2017) (holding that an ALJ has no obligation to consider, *sua sponte*, possible conflicts arising from vocational materials such as the Occupational Outlook Handbook), *as amended*, No. 15-16849, slip op. at 16-17 (9th Cir. Feb. 28, 2018). On the other hand, Plaintiff's argument premised on the DOT is not forfeited by her failure to raise the potential conflict during the administrative hearing, because the Commissioner's own rulings impose an affirmative duty on the ALJ to resolve DOT conflicts without regard to how the conflict was raised. *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 and n.5 (9th Cir. 2017) ("[O]ur law is clear that a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts [with the DOT] through questioning") (citing Social Security Ruling 00-04p); *Shaibi*, 870 F.3d at 882 ("It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency."). Thus, the only argument preserved here is the one premised on the DOT: an apparent and unresolved conflict between Plaintiff's hand limitations and the DOT's stated requirements of frequent reaching, handling, fingering, and feeling for the manicurist occupation.

Plaintiff's DOT argument does not warrant reversal of the ALJ's decision, for two reasons. First, Plaintiff's focus on the DOT does not account for the ALJ's alternative finding that was independent of the DOT, for the initial period from December 15, 2011 to March 31, 2014. For that period, the ALJ found that Plaintiff could perform her past relevant work as a manicurist, both as generally and actually performed. (AR 32.) Only one finding — general performance or actual performance — is required to uphold the ALJ's step four determination for the initial period. *See Pinto*, 249 F.3d at 845. The ALJ's actual performance finding was based not on the DOT, but on Plaintiff's own description of what the manicurist occupation involved. (AR 32.) As Plaintiff described it, the manicurist occupation as she actually performed it involved lifting up to 20 pounds; standing, kneeling, and sitting; and lifting buckets of spa water. (AR 61-62.) The ALJ did not make any

16

findings about Plaintiff's functional limitations for the initial period (AR 27) that conflicted with this description. *Cf. Pinto*, 249 F.3d at 845 (rejecting an ALJ's finding that a claimant could perform her past relevant work as she actually performed it when the claimant's testimony about what the job involved conflicted with the ALJ's findings of her functional limitations). Thus, based on the existing record, the ALJ's step four determination for the initial period from December 15, 2011 to March 31, 2014 does not warrant reversal.

Second, the ALJ's step four determination for the subsequent period from April 1, 2014 to December 17, 2015, which was based solely on the DOT, did not raise a potential and unresolved conflict. The hand limitations that Plaintiff claims raised a DOT conflict could not have done so because the ALJ never incorporated those hand limitations in the RFC determination for that period. In the absence of that prerequisite, no conflict arose. Instead, by arguing that she has hand limitations that the ALJ did not properly account for, Plaintiff is challenging the adequacy of the RFC itself, rather than identifying a subsequent conflict with the DOT. But the primary evidence that Plaintiff cited to challenge the RFC determination, the opinion of Dr. Sodagar-Marvasti, was properly rejected because it was inadequately explained and supported, as discussed above. Plaintiff cites no other medical evidence of hand limitations that should have been incorporated by the ALJ in the RFC determination. Plaintiff therefore has not properly raised a DOT conflict. Thus, based on the existing record, the ALJ's step four determination for the subsequent period of April 1, 2014 to December 17, 2015 does not warrant reversal.

### IV. **Remand For Further Administrative Proceedings**

For the reasons discussed above, the only issue warranting reversal is the absence of a sufficiently specific evaluation of Plaintiff's subjective symptom testimony. This matter, however, is not appropriate for a remand for an award of benefits because further administrative proceedings, specifically with respect to a legally sufficient evaluation of

Plaintiff's subjective symptom testimony, would serve a useful purpose of resolving outstanding factual issues. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.") (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)); *see also Connett*, 340 F.3d at 876 (remanding for further administrative proceedings where the ALJ failed to properly consider a claimant's subjective symptom testimony).

Accordingly, the Court remands this matter for further administrative proceedings in which the ALJ is directed to conduct an appropriately supported assessment of Plaintiff's subjective symptom testimony.

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 8, 2018

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE